UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 2:15-CR-1-DLB-EBA-1

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

V.                              RECOMMENDED DISPOSITION

DONTE E. GRIFFIN,                                                                              DEFENDANT.

*** *** *** ***

**I. INTRODUCTION**

The Defendant, Donte E. Griffin, brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. [R. 61]. Consistent with local practice, the matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned recommends that Griffin's motion be **DENIED**.

**II. FACTS AND PROCEDURAL HISTORY**

On November 18, 2014, while spending the evening with Qwan Hood, the mother of his unborn child, Griffin received a phone call from another woman. The call sparked an argument between Griffin and Hood, which continued as the two left to pick up Hood's one-year-old son from his babysitter. Their bickering caused Hood to stop the car on a travel lane of a parking area in the City Heights area of Covington, where Hood struck Griffin. During the ensuing physical altercation, Griffin lost a ring. Upon attempting to look for it inside the car and on the ground, Hood attempted to leave. Thereafter, Griffin allegedly drew a gun and fired one shot into the hood of her car. After further discussion, the argument deescalated.

Having received reports of gunfire, police converged on the scene. As officers cautiously approached the vehicle with guns drawn, they found Griffin outside of the car on the driver's side and Hood seated in the driver's seat. Griffin was ordered to show his hands and back away from the vehicle. Griffin leaned toward the car while removing his hand from his pant pocket or waistband and was observed to do something with his hand inside the car. He then complied with the officers' instructions and was handcuffed and placed in a police car. Officers then turned their attention to the car where Hood was still seated in the driver's seat, her son in a car seat in the back, a .25-caliber handgun on the rear floorboard behind the driver's seat, and a spent .25-caliber shell casing on the ground in front of the vehicle. Hood informed police that it was Griffin's gun and that the bullet hole in the hood of her car came from Griffin on that night.

Griffin was held in the Kenton County Jail on state charges, which were subsequently dismissed. While in state custody, Griffin made over 80 phone calls to Hood. Most, if not all, of these calls were recorded. During those conversations, Griffin apologized for the events that led to his arrest. He also encouraged Hood to recant the story she told a detective the night of Griffin's arrest, and to tell either the prosecutor or her public defender that the bullet hole in her car had been made some other night, and that the gun was not his. He further encouraged her to express that the charges against him should be dropped because he could not be found guilty. Griffin wanted Hood to deny that he had asked her to change her story, and instead to plead that she had lied earlier because the police had threatened to label her an unfit mother and take her son from her. Finally, Griffin faulted Hood for not promptly following his instructions, telling her that if she really wanted him to come home, she would do as he said.

On January 15, 2015, Griffin was indicted on one count of being a convicted felon in possession of a firearm. [R. 1]. At trial, Hood testified that she did not know where the gun had

come from, nor did she remember any details about it. However, she testified unequivocally that Griffin had fired a bullet into the hood of her car on the night of November 18, 2014. Five police officers that were on the scene on that night also testified. Although none saw a gun in Griffin's hand, each recalled seeing Griffin bend or lean into the driver's side of the car before raising his hands. One officer testified that Griffin took his hand from inside his pocket or the waistband of his pants and then did something with it inside the vehicle. The officer who discovered the pistol testified that the gun was found behind the driver's seat in the floor. This is the same place where officers observed Griffin standing before he leaned into the car. Another officer testified that the bullet hole in Hood's car appeared fresh because there was no evidence of corrosion. Multiple witnesses confirmed that the spent shell casing found next to the vehicle was the same caliber, and produced by the same manufacturer, as the unspent ammunition found in the pistol. Finally, the government played seven excerpts from the recorded phone calls between Griffin and Hood, including conversations during which Griffin asked Hood to change the story she told the night of his arrest, and instead make a statement absolving him of any wrongdoing.

After being found guilty, Griffin was sentenced to 120 months of imprisonment, three years supervised release, and a $100 special assessment. [R. 38]. His conviction was affirmed on appeal. On March 6, 2018, he filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. [R. 61]. Griffin now contends: (1) the prosecutor engaged in prosecutorial misconduct, during opening and closing statements, when she declared the government's intention to prove that Griffin had asked Hood to lie to the jury about the events of the evening; (2) his counsel was ineffective for: (a) failing to request a limiting or curative instruction following the prosecution's case; (b) failing to object to the testimony of Qwan Hood; and (c) failing to file a motion to suppress Hood's trial testimony. [R. 61 at 4-5].

## III. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For relief under 28 U.S.C. § 2255, the prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); *see also Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). He must sustain these allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If the prisoner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)); *Pough*, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## IV. ANALYSIS

Griffin raises two kinds of claims in his Motion to Vacate: prosecutorial misconduct and ineffective assistance of counsel. [R. 61]. For the reasons stated below, the undersigned recommends that his motion be denied.

### 1.  Procedurally Default of Prosecutorial Misconduct Claim

Griffin argues that the prosecutor made improper statements during the trial by asserting that the evidence would show that Griffin told the sole-eyewitness, Qwan Hood, to lie during her testimony before the jury. [R. 61 at 4]. He claims the evidence did not support this accusation, and that instead, the Government failed to introduce evidence to support his argument. *Id*. In any case, Griffin has both procedurally defaulted this claim and has failed to satisfy the requirements to be granted relief in this matter.

First, Griffin has procedurally defaulted this claim by not previously raising it during his direct appeal to the Sixth Circuit. As a result, it is not properly brought as part of his current collateral attack. The United States Supreme Court has long held that a motion to vacate will not substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Although grounds do exist to allow Griffin to bring a motion to vacate seeking relief from his guilty plea, conviction and sentence, Griffin must clear a significantly higher hurdle than he would face on direct appeal. *Id*. at 165. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent' . . .." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *see also U.S. v. Frady*, 456 U.S. 152, 167-68 (1982).

Therefore, in order to raise his claim now, he must show cause for his failure to raise the claim on appeal, and show that he would suffer actual prejudice if it were not reviewed; alternatively, he must show that he was actually innocent. *Bousley*, 523 U.S. at 622. "To establish actual innocence, [a] petitioner must demonstrate that, ''in light of all the evidence,'' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)). "[I]n order to assert an actual innocence

claim, a habeas petitioner must allege that he is innocent of the underlying criminal offense(s) of which he was convicted, not of some aspect of the sentence imposed upon him." *Williams v. Holland*, No. 13-CV-239-GFVT, 2014 WL 1385192, at *4 (E.D. Ky. Apr. 9, 2014).

Here, Griffin shows neither. He only claims that the prosecution's statements that he asked Hood to lie was not supported by the evidence and the government failed to introduce evidence to support the argument. [R. 61 at 4]. The fact that the claim was not raised on direct appeal, and Griffin's failure to address the required elements of cause and prejudice, or demonstrate actual innocence, should result in a finding that he has procedurally defaulted this claim.

### 2. Substantive Prosecutorial Misconduct Claim

Assuming that this claim is not procedurally defaulted, Griffin still does not demonstrate entitlement to relief. The Supreme Court has long held that "for habeas relief to be granted on the basis of a prosecutor's comments, the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Wilson v. Bell*, 368 Fed. Appx. 627, 632 (6th Cir. 2010) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). "The 'touchstone of due process analysis…is the fairness of the trial, not the culpability of the prosecutor.'" *Bell*, 368 Fed. Appx. at 632 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "Therefore, even if a prosecutor's conduct was undesirable or even universally condemned, it does not constitute a due process violation unless the conduct was so egregious that it rendered the entire trial fundamentally unfair." *Id*. "Determining the effect on the trial as a whole includes consideration of whether the objectionable content was invited by or was responsive to the defense." *Id*. (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

"Reviewing allegations of prosecutorial misconduct is a two-step inquiry: determining whether the statements were improper; and, if so, determining whether they were flagrant enough

to warrant reversal." *United States v. Wells*, 623 F.3d 332, 338-37 (6th Cir. 2010); *United States v. Galloway*, 316 F. 3d 624, 632 (6th Cir. 2003). "In determining whether the prosecuting attorney's remarks were improper, they must be considered within the context of the trial as a whole, with particular attention to whether they may have been invited by defense counsel's conduct." *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008) (*citing United States v. Barnett*, 298 F.3d 516, 522-23 (6th Cir. 2005)). "Inappropriate prosecutorial comments, standing alone, do not warrant a new trial." *Gonzalez*, 512 F. 3d at 292 (*citing United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994)). "To warrant relief, the prosecutorial misconduct must have been 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial.'" *Id*. (*quoting United States v. Payne,* 2 F.3d 706, 712 (6th Cir. 1993)). "Even under plain error review, relief may be warranted, but only if the prosecutorial misconduct was 'exceptionally flagrant.'" *Id*. (*quoting Girts v. Yanai*, 501 F.3d 743, 759 (6th Cir. 2007)).

Four factors are utilized to determine if an improper statement was flagrant enough to warrant reversal: 1) whether the statements tended to mislead the jury and prejudice the defendant; 2) whether the statement were isolated or prevalent; 3) whether the statement were accidentally or deliberately placed before the jury; and 4) whether the evidence against the accused is otherwise strong. *See Galloway*, 316 F.3d at 632; *Gonzalez*, 512 F.3d at 292.

First, the prosecutor's comments were not improper. Griffin's main contention is that the government fails to support its argument with evidence. The record, however, clearly refutes this; not only did Hood testify in Court, but the recordings of Griffin and Hood's telephone conversations were played for the jury. [R. 48 at 130-41]. Considering this evidence, the recorded phone conversations, and the witness testimony, the jury ultimately concluded who was telling the truth. The prosecution made an inference from the evidence, as did the defense. Both sides

requested that the jury agree with them in drawing their own inference of whether the phone calls show Griffin asked Hood to lie or not. [R. 49 at 73-75; R. 49 at 77-78]. A prosecutor is permitted to remark on a witness's credibility as long as the comment reflects a reasonable inference from the evidence adduced at trial. *See United States v. Durham,* 211 F.3d 437, 441 (7th Cir. 2000) (prosecutor's statements during closing argument that defense witness was a "dope dealer" and a "liar" were permissible comments on witness's credibility). "[S]o long as the evidence supports the comments, prosecutors may speak harshly about the actions and conduct of the accused." *Id*. In this case the evidence did support the comments. The admission of the recordings by the trial court were upheld by the Sixth Circuit on appeal as harmless, and the Court found that the outcome of the trial would have been unchanged had they not been admitted. [R. 53 at 8]. Therefore, it was appropriate for either side to comment on the recordings. Quite simply, there is no indication that the prosecutor's comments were improper; even if there was an indication, any misconduct by the prosecutor would be harmless based on the evidence in the record. *United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir. 1986) (prosecutor's improper conduct was not grounds for reversal where there was substantial evidence of guilt and the trial court made efforts to take corrective measures); *Gonzalez*, 512 F.3d at 293 (the comments of the prosecutor were invited, at least in part, by record evidence and statements of defense counsel and the comments were isolated and did not represent a manifest attempt to improperly reflect on defendant's silence); *United States v. Cobleigh,* 75 F.3d 242, 247 (6th Cir. 1996) (prosecutorial misconduct, if any, was harmless error).

   Second, assuming for the moment the comments were found to be improper, they cannot be found to be flagrant. By weighing the four factors described above, it is clear the comments do not rise to an exceptionally flagrant level. *Gonzalez*, 512 F. 3d at 292. To start, the comments do not tend to mislead the jury or prejudice the defendant. The jury had heard the testimony and the

recorded telephone conversation between Griffin and Hood. The prosecution clearly told the jury it was for them to decide who was telling the truth based on the evidence, and the prosecution had ample evidence to question whether Griffin asked Hood to lie for him. [R. 49 at 77]; *United States v. Scott*, 716 Fed. Appx. 477, 487 (6th Cir. 2017) (referring to narcotics as poison did not mislead the jury) (*citing Durham*, 211 F.3d at 400 (declining to vacate conviction due to closing argument in which prosecutor referred to defendant as "slick little dope dealer" who "uses kids and exploits them to peddle poison")). So, this factor weighs against Griffin. Secondly, the prosecutor's comments were also made in isolation. The comments, that Griffin asked or told Hood to lie, were only made during opening and closing arguments. [R. 61 at 4]. These comments do not seem to "permeate the entire atmosphere of the trial." *Gonzalez*, 512 F. 3d at 292. It is not as if the comments were made repeatedly throughout the trial. *DeChristoforo,* 416 U.S. at 647 (a few brief sentences in the prosecutor's long and expectably hortatory closing argument which might or might not suggest to a jury that the respondent had unsuccessfully sought to bargain for a lesser charge does not amount to egregious misconduct warranting reversal). Besides, it is not the comments of the prosecutor, but the recordings and testimony of Hood that shows Griffin may have intended her to lie for him. Therefore, this factor weighs against Griffin. Thirdly, it cannot be argued that the comments were not put before the jury deliberately. For the prosecutor clearly intended to say what she said, this was not an accidental slip of the tongue. Consequently, this factor does weigh in favor of Griffin. Finally, the unchallenged evidence against Griffin weighs heavily against him. As the Sixth Circuit found the admission of the recordings to be harmless, so to are these comments by the prosecutor harmless and unlikely to have changed the outcome of the trial. [R. 53 at 8]; *Scott*, 716 Fed. Appx. at 487 (ample evidence for the jury to convict the defendant, even leaving aside the disputed statement, suggests that the prosecutor's remarks did

not constitute plain error). Thus, finding that the weight of these four factors goes against Griffin, the comments are found not to be flagrant and do not warrant reversal.

Finally, if a comment is not flagrant but is still found to be improper, a court should reverse a conviction only when: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense objected to the statements; and 3) the trial judge did not cure the impropriety through admonishment to the jury. *Galloway,* 316 F.3d at 632; *United States v. Monus,* 128 F.3d 376, 394 (6th Cir. 1997). Here, Griffin's claims do not warrant reversal under the improper but not flagrant standard, because all three factors weigh against him. *Id.* First, the evidence against Griffin was overwhelming. One reason why the Sixth Circuit upheld the conviction was because of "the strength of [the] unchallenged evidence" against Griffin. [R. 53 at 8]. Clearly, for Griffin to be successful under this analysis the evidence would have to be in his favor and that is simply not the case here. *United States v. Brown*, 66 F.3d 124, 128 (6th Cir. 1995) (given the overwhelming evidence against the defendant, the prosecutor's comments do not warrant reversal). Secondly, there does not seem to be an objection to any of the prosecutor's comments made during opening and closing arguments. If such an objection was made it has not been brought to the Court's attention. Finally, the jury was admonished that anything the prosecutor said was not evidence. The prosecutor and the judge both informed the jury of this. [R. 49 at 66; R. 25 at 5]. Moreover, the defense was granted a limiting instruction covering the jury's consideration of the recordings, further limiting the effect of the recordings or comments made there to. [R. 25 at 19]. *Brown*, 66 F.3d at 128 (reversal is unwarranted on the basis of non-flagrant conduct unless the defendant timely objected and the district court failed to cure the impropriety with an appropriate instruction).

For the foregoing reasons, Griffin has failed to show that the prosecutor's comments infected his trial with the unfairness to warrant a finding that his resulting conviction was based

Page **10** of **17**

on a denial of his due process rights. Even after reviewing the record and his appeal to the Sixth Circuit, there is no claim of error or evidence to support a claim of prosecutorial misconduct that would support vacating his sentence now on habeas review. Consequently, Griffin is not entitled to habeas relief on this claim.

### 3. Ineffective Assistance of Counsel

Griffin also asserts that his trial counsel was ineffective in three specific ways: (a) failing to request a limiting or curative instruction following the prosecution's case; (b) failing to object to the testimony of Qwan Hood; and (c) failing to file a motion to suppress Qwan Hood's trial testimony. [R. 61 at 4-5].

To prevail on an ineffective assistance of counsel claim under Section 2255, the petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . . ." *Id.* Second, the petitioner must establish prejudice, by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly

egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Therefore, for Griffin to succeed on a claim of ineffective assistance of counsel he must show that his attorney's performance and representation were deficient, and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687-88. Because Griffin fails to meet his burden on both deficient performance and prejudice for each of his three claims of ineffective assistance of counsel, all three claims must fail.

**a.  Failing to Request a Limiting or Curative Jury Instruction.**

Griffin's first ineffective assistance of counsel claim is that his counsel was deficient in failing to request a limiting or curative instruction following the prosecution's case. [R. 61 at 4]. However, he has not indicated what, if any, evidence resulted in undue prejudice, necessitating counsel's request for a limiting or curative instruction. [R. 61 at 4]. Thus, under Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings, Griffin has failed to state the facts supporting his claim for relief.

Construing Griffin's claim broadly, this Court is led to conclude that Griffin sought a curative instruction regarding the recorded conversations between he and Hood. Notwithstanding, the record reflects that Griffin's counsel argued for a limiting instruction and was granted one. It was only *after* the Government laid a foundation through Hood's testimony that the recordings

were played for the jury. [R. 48 at 136-142]. In fact, the Court gave Griffin's counsel two limiting instructions to choose from, and gave counsel the option of when he would like to have the limiting instruction read to the jury. [R. 48 at 117-120]. Therefore, because a limiting instruction was allowed by the trial court, and read to the jury at the conclusion of the trial, Griffin's claim that his counsel failed to request such an instruction must fail. [R. 49 at 49].

In sum, Griffin has failed to show that his counsel's representation fell below an objective standard of reasonableness, and accordingly, this claim of ineffective assistance of counsel provides him no relief.

**b. Failing to Object to Testimony of Qwan Hood.**

Griffin's second ineffective assistance of counsel claim is that his counsel failed to object to the testimony of Qwan Hood. [R. 61 at 4]. Griffin's contention is that the prosecution introduced evidence of domestic violence through Hood's testimony that impermissibly prejudiced the jury. *Id*. This claim also lacks merit, and therefore must fail.

As explained above, Griffin and Hood were together on the night Griffin was arrested. It was the altercation between Griffin and Hood, while in Hood's car, that lead to Griffin losing his ring, which caused him to get out of the car to find it. When Griffin was out of the car, Hood had an opportunity to leave, but when she attempted to leave, Griffin allegedly became enraged and shot a bullet into the hood of Hood's car. Hood then stopped the car and the couple had an opportunity to talk, deescalating the situation. The sound of the gunshot was enough to alert police to the situation, which lead to the arrest, detention, and now conviction of Griffin.

Griffin was charged with one count of a felon in possession of a firearm. [R. 1]. In order to address Griffin's charge, the Court must address the entire situation, the surroundings, and events prior to and after Griffin's arrest. *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998)

("The jury is entitled to know the setting of a case. It cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."). To the extent that Griffin is arguing that his attorney failed to object to the testimony as evidence of other crimes or wrongs under Federal Rule of Evidence 404(b), his claim is without merit. Rule 404(b) "does not apply where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged in the indictment." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (citing *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982)). Other crimes or wrongs are deemed extrinsic when they occurred at different times and under different circumstances from the charged offense. *Barnes*, 49 F.3d at 1149. Other crimes or wrongs are deemed intrinsic acts when they are part of a single criminal episode. *Id*. Likewise, background evidence, sometimes referred to as "res gestae, does not implicate Rule 404(b)." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Background evidence, or "res gestae, 'may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense.'" *United States v. Pratt*, 704 Fed. Appx. 420, 423 (6th Cir. 2017) (citing *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015)).

Clearly, Qwan Hood's testimony regarding the events on the night in question falls into the category of background evidence. Hood's testimony either relates to the events leading up to Griffin's arrest or the subsequently recorded phone calls— all of which are directly probative of the charged offense, arises from the same events as the charged offense, or forms an integral part of the witness's testimony. [R. 48 at 120-138]. Furthermore, anything Hood testified about, occurring that night or related to that night, that she had personal knowledge of, is "inextricably

intertwined" with the charges against Griffin. *Barnes*, 49 F.3d at 1149. As a result, counsel cannot be said to have been deficient in failing to object; Griffin provides no basis to find otherwise.

Consequently, this claim fails because Griffin has failed to prove both deficient performance and prejudice.

### c. Failing to File a Motion to Suppress Qwan Hood Testimony.

Griffin's final ineffective assistance of counsel claim is that his counsel was ineffective for failing to file a motion to suppress the testimony of Qwan Hood. [R. 61 at 5]. Griffin's contention is that Qwan Hood was coerced or pressured into testifying at trial, and had counsel moved to suppress her testimony he would not have been convicted. *Id*. Like the other claims, this one also lacks merit and should be denied, as merely conclusory allegations of ineffective assistance are insufficient to state a constitutional claim. *Wogenstahl v. Mitchel*, 668 F.3d 307, 343 (6th Cir. 2012). Here, Griffin claims that his counsel was ineffective for not moving to suppress Hood's testimony, but he provides no explanation or reason to justify why counsel should have moved for suppression.

Hood's first-hand account of the incident as the victim and sole-eyewitness, provides the necessary personal knowledge to allow her to testify as a witness. *See* FRE 602. Hood also had to give an oath or affirmation to testify truthfully. *See* FRE 603; [R. 48 at 120]. Thus, as the trial court properly stated, it is up to the jury to decide whether Griffin shot at Hood. [R. 48 at 7]. At trial, Hood testified that Griffin shot into the hood of her car and denied that he asked her to lie by claiming that the police pressured her into saying the gun was his. *Id*. at 130, 140, 142. As the trier of fact, the jury was entitled to believe or disbelieve all or any part of Hood's testimony. *Wright v. West*, 505 U.S. 277, 296 (1992).

Hood's testimony was both relevant and probative. Thus, because her testimony is proper background evidence, Griffin has failed to show that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Moreover, Griffin has failed to show that he was prejudiced, since it is unlikely that the results of trial proceedings would have been different based on the accusations described above. *Id*. at 694-95. Therefore, this claim fails, and Griffin has not shown that his counsel was ineffective.

### V. MOTION FOR HEARING

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). In the alternative, "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required 'to determine the truth of the petitioner's claims.'" *Ray v. United States*, 721 F.3d 758, 761 (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). The Sixth Circuit has observed that a § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). However, no hearing is required if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of facts. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

In this case, the undersigned recommends that all of Griffin's claims, found in his Motion to Vacate, be denied. As such, there is no factual dispute necessitating an evidentiary hearing. Even though Griffin's burden for establishing a right to an evidentiary hearing is light, it cannot be met

because his allegations clearly contradict the record and are conclusory, rather than statements of fact. For these reasons, an evidentiary hearing would be unnecessary.

## VI. CONCLUSION

For the reasons set forth above, it is recommended that Griffin's Motion to Vacate [R. 61] be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Particularized objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

This the 17th day of January, 2019.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge